UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 07-611(DMC) |
| -v.- | : | 18 U.S.C. §§ 371 & 2<br>15 U.S.C. §§ 78j(b) and 78ff |
| PHIL WONG and<br>JERRY STEFANIUK, | : | 17 C.F.R. § 240.10b-5 |
| Defendants. | : | **I N D I C T M E N T** |

**COUNT ONE**

(Conspiracy to Commit Securities Fraud)

The Grand Jury in and for the District of New Jersey, sitting in Newark, charges:

**Relevant Entities and Individuals**

1. At all times relevant to this Indictment, Secureware, Inc. ("Secureware") was a Nevada corporation that, operating under the name "Money House Financial Services, Inc.," provided short term, small loans to consumers. Secureware's common stock was publicly-traded on the over-the-counter, "Pink Sheets" market, an electronic, screen-based market for securities. Secureware's common stock traded under the symbol "SECW."

2. At all times relevant to this Indictment, defendant PHIL WONG was a stock promoter who purported to be a major shareholder in Secureware.

3. At all times relevant to this Indictment,

defendant JERRY STEFANIUK, was a stock broker at Golden Capital Securities Ltd., a firm located in Vancouver, British Columbia, Canada.

**The Scheme To Defraud**

4. From in or about June 2002 through on or about August 1, 2002, defendants PHIL WONG and JERRY STEFANIUK schemed to manipulate the market for Secureware's common stock by artificially inflating the demand for and price of that stock, in order to allow WONG to sell his Secureware stock holdings at a profit. WONG and STEFANIUK planned to do so by paying secret bribes to stock brokers to cause their customers to purchase Secureware's stock.

5. In furtherance of the scheme, from in or about June 2002 through on or about August 1, 2002, defendants WONG and STEFANIUK had numerous discussions with a confidential informant (the "CI") working at the direction of the Federal Bureau of Investigation (the "FBI"), who purported to know stock brokers who would sell Secureware stock to their customers in return for secret, undisclosed bribes that would be paid by defendant WONG. According to the plan, when the brokers purchased Secureware stock on behalf of their clients, these orders would be "filled" using sales of Secureware shares from an account controlled by defendant WONG, and defendant WONG would in turn pay the CI 50 percent of the proceeds of such sales, who would in turn pay the brokers 25 percent of the proceeds of such sales. In order to

insure that defendant WONG paid the 50 percent owed to the CI following the purchases, defendant STEFANIUK agreed to accompany defendant WONG to the bank to ascertain that the funds owed to the CI were in fact wire transferred to the CI.

6. Pursuant to the scheme, on or about July 11, 2002, in a recorded phone call, the CI informed defendant WONG that the brokers were "ready to go," and "we can definitely, guaranteed start doing trades tomorrow morning." The CI told WONG that the brokers "haven't been paid from commissions, and they want to get paid . . . in cash," to which WONG responded, "Right."

7. On or about July 12, 2002, using an undercover brokerage account at a firm in Jersey City, New Jersey (the "Undercover Account"), that was purported to be utilized by a corrupt stock broker, approximately 25,000 shares of Secureware stock was purchased at a price of approximately $0.40 per share, for a total cost of approximately $10,000, not including commissions and fees.

8. On or about July 12, 2002, after the FBI purchased shares of Secureware stock using the Undercover Account, defendant WONG left a voicemail message for the CI saying, in substance, that WONG was aware that orders to purchase Secureware stock had been placed by a firm in New Jersey, and that WONG had attempted to cause those orders to be filled by selling Secureware stock that he controlled. Specifically, defendant WONG stated that orders for approximately 13,000 shares, at a

price of $0.40 per share, had come in from a firm out of New Jersey. WONG stated that "we got at least eight of that. We might have lost five." WONG said, "So far, we've got eight confirmed." WONG said that he was not sure where the rest of the orders were, and encouraged the CI to follow up.

9. On or about July 17, 2002, in a recorded phone call, defendant STEFANIUK told the CI that defendant WONG had been trying to get the CI on the phone because they had some money to give the CI.

10. On or about July 17, 2002, in a recorded phone call, the CI told defendant WONG that the CI would fax wiring instructions to WONG the next day, and WONG told the CI that he had received the proceeds from the purchase of approximately 18,000 shares by the CI's stock brokers.

11. Subsequently, pursuant to the scheme, on or about July 26, 2002, defendant WONG wire transferred approximately $4,200 from an account in the name of "Phil Wong" at Canadian Imperial Bank of Commerce in Canada, to a brokerage account in the United States in the name of the CI, as payment to the CI and the stock brokers for the July 12th stock purchases.

**STATUTORY ALLEGATIONS**

**The Conspiracy**

12. From in or about June 2002 through on or about August 1, 2002, in the District of New Jersey and elsewhere, defendants PHIL WONG and JERRY STEFANIUK, did knowingly and

willfully conspire and agree with each other and others to commit an offense against the United States, namely, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, to use and employ, in connection with the purchase and sale of Secureware common stock, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, all contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

**Object of the Conspiracy**

13. It was an object of the conspiracy for defendant PHIL WONG, defendant JERRY STEFANIUK, and others to obtain money from the sales of Secureware's common stock induced by the conspirators' offer to pay bribes to stockbrokers who sold Secureware common stock to members of the investing public.

**Means and Methods of the Conspiracy**

14. Among the means and methods by which defendants PHIL WONG and JERRY STEFANIUK and their co-conspirators would and did carry out the conspiracy were the following:

a. Defendants WONG and STEFANIUK agreed to pay secret bribes to brokers in order to induce them to cause their retail customers to purchase and hold Secureware's stock.

b. Defendants WONG and STEFANIUK used interstate wires and facilities of interstate and foreign commerce in furtherance of the objects of the conspiracy.

**Overt Acts**

15. In furtherance of the conspiracy and to effect its unlawful object, defendants PHIL WONG and JERRY STEFANIUK and others committed and caused to be committed the following overt acts, among others, in the District of New Jersey and elsewhere:

a. On or about June 5, 2002, in a recorded call, the CI and defendant WONG agreed that they would split the proceeds of stock sales 50-50, and that the CI would give 25 percent to the brokers.

b. On or about June 19, 2002, in a recorded call, defendant STEFANIUK told the CI that after defendant WONG sold stock from his account, STEFANIUK would walk with WONG to the bank, and wire the funds to the CI.

c. On or about June 26, 2002, in a recorded call, defendant STEFANIUK told the CI he planned to go with defendant

WONG to wire the proceeds of the stock sales back to the CI.

d. On or about July 11, 2002, in a recorded call, the CI told defendant WONG that the stock brokers had not been earning commissions for stock sales, so they wanted to get paid in cash.

e. On or about July 12, 2002, after the FBI purchased shares of Secureware stock using an undercover brokerage account, defendant WONG left a voicemail message for the CI saying that orders for approximately 13,000 shares, at a price of $0.40 per share, had come in from a firm out of New Jersey.

f. On or about July 17, 2002, in a recorded call, defendant STEFANIUK told the CI that they had some money to pay the CI.

g. On or about July 17, 2002, in a recorded call, defendant WONG told the CI that he had received the proceeds from the purchase of approximately 18,000 shares by the CI's brokers.

h. On or about July 26, 2002, approximately $4,200 was wire transferred from a bank account in Canada in the name of "Phil Wong" to the CI's brokerage account in the United States.

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO**

(Securities Fraud)

16. The allegations set forth in paragraphs 1 through 11 and 13 through 15 of this Indictment are repeated and realleged as if set forth fully herein.

17. From in or about June 2002 through on or about August 1, 2002, in the District of New Jersey and elsewhere, defendants PHIL WONG and JERRY STEFANIUK and others knowingly and wilfully, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, in connection with the purchase and sale of Secureware common stock, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18 United States Code, Section 2.

A TRUE BILL

CHRISTOPHER J. CHRISTIE
United States Attorney

CASE NUMBER: ______________

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

PHIL WONG and JERRY STEFANIUK

## INDICTMENT FOR

Conspiracy to commit securities fraud.

18 U.S.C. § 371; 15 U.S.C. § 78j(b) and 78ff;
17 C.F.R. § 240.10b-5; 18 U.S.C. § 2

A True Bill,

CHRISTOPHER J. CHRISTIE
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

STEVEN FELDMAN
*SPECIAL ASSISTANT U.S. ATTORNEY*
(212) 637-2484

USA-48AD 8
(Ed. 1/97)